

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X   Docket No.  CV-

MARIA-LUCIA ANGHEL, M.D.,

                          Plaintiff,

       -against-

THE NEW YORK STATE DEPARTMENT OF
EDUCATION, THE NEW YORK STATE
DEPARTMENT OF HEALTH, THE BOARD OF
PROFESSIONAL MEDICAL CONDUCT, THE
OFFICE OF PROFESSIONAL MEDICAL
CONDUCT, LABORATORY INVESTIGATIVE
UNIT: WADSWORTH CENTER, MARY ELLEN ELIA,
COMMISSIONER OF EDUCATION, individually
and in official capacity, NIRAV SHAH, M.D.,
COMMISSIONER OF HEALTH, in his individual
capacity, HOWARD ZUCKER, M.D.,
COMMISSIONER OF HEALTH, individually and
in official capacity, JAMES F. HORAN, individually and in
official capacity, ERIC T. SCHNEIDERMAN,
individually and in official capacity, ANDREW
CUOMO, individually and in official capacity,
CLAUDIA MORALES BLOCH, individually and in
official capacity, KATHRYN LEONE, individually and
in official capacity, HAROLD ROSENTHAL,
individually and in official capacity, EILEEN HEAPHY,
individually and in official capacity, COLLEEN FLOOD,
individually and in official capacity, MICHAEL WEINSTEIN,
individually and in official capacity, STEPHAN PETRANKER,
M.D., individually, KEITH SERVIS, individually and in official
capacity, ROY NEMERSON, individually and in official capacity,
ROBERT LO CICERO, in his individual and official capacity,
VALERIE GIORDANO, in her individual and official capacity,
DENNIS GRAZIANO, in his individual capacity, and official
capacity, UNITED HEALTHCARE, MICHAEL STEPHANO,
individually and as an employee of United Healthcare, THOMAS E.
MERCURE, individually, and in official capacity, ROBERT S. ROSE,
individually and in official capacity, JOHN LAHTINEN,

VERIFIED
COMPLAINT
Special Prosecutor and
Jury trial demanded in the
interest of justice

# 15 CV 5751

individually and in official capacity, MICHAEL KAVANAGH,
individually and in official capacity, ELIZABETH A. GARRY,
individually and in official capacity, RUSKIN MOSCOU
FALTISCHEK, PC, ALEXANDER G. BATEMAN, individually,
DOUGLAS J. GOOD, individually ARTHUR SPATT,
individually and in official capacity, WILLIAM D. WALL,
individually and in official capacity, .AMALYA L.
KEARSE, individually and in official capacity, DENNIS JACOBS,
individually and in official capacity, GERARD E. LYNCH, individually
and in official capacity, CATHERINE O'HAGAN WOLFE,
individually and in official capacity, ERIC HOLDER, individually and in official capacity,
LORETTA LYNCH, individually and in official capacity, CATHERINE
GROCHOWSKI, individually and in official capacity,

Defendants.



-----------------------------------------------------------------X

## COMPLAINT PURSUANT TO RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT AND OTHER CAUSES OF ACTION

Plaintiff, MARIA-LUCIA ANGHEL, M.D. (hereinafter "DR. ANGHEL"), as

and for her Complaint, respectfully alleges as follows:

1.      Plaintiff sues the Defendants for conspiring to revoke her medical license and

persecute her, for vindictively invoking an alleged violation of federal CLIA Law, and

inapplicable or non-existing laws, for acting outside their statutory jurisdiction, for

operating the federal CLIA program as a criminal enterprise, for engaging in a pattern

of racketeering, extortion, usurpation of power, treason, case-fixing, fabricating

evidence, harboring and concealing fraud, class-of-one discrimination, for violating

her right of access to the courts, for violating her statutory rights to obtain exculpatory

and impeachment documents under the Freedom of Information Act ("FOIA"), 5

U.S.C. § 552, for violating her vested property rights, for misappropriating her medical

license, property, liberty, and livelihood, for irreparably damaging her medical

4

career, for wantonly perpetuating the arbitrary deprivation of her medical license, for conspiracy to destroy her and her medical career, for conspiracy to abuse power and cover up fraud, for conspiracy to obstruct justice, for arbitrarily violating her statutorily-protected rights under Title II of the Civil Rights Act of 1964, her constitutional rights, Free Speech, Due Process and Equal Rights.

2.      There is no dispute about State's discriminatory action, thus its violation of Petitioner's Equal Protection Rights, since she is the only physician in the USA, who was delicensed and destroyed through unauthorized and retaliatory enforcement of CLIA law.

3.      For the last 12+ years, Defendants have systematically conducted a corrupt enterprise, in violation of the Racketeer Influenced And Corrupt Organizations Act ("RICO") all of which is continuing in nature. Both State and Federal Government have used all the resources at their disposal to impoverish and destroy Petitioner in order to cover up criminal acts and fend off civil charges. As a direct result of their criminal enterprise, cover-up, and rights deprivation, Dr. Anghel has suffered enormous and irreparable damages and she continues to suffer irreparable damages. Since she was systematically and wantonly deprived of fundamental liberties in all courts so far, for seven years now, she is filing this complaint as a *de facto* political prisoner.

4.      In the interest of justice, Plaintiff seeks emergency, mandatory reinstatement of her medical license, *nunc pro tunc*, a temporary restraining order, a three-judge court to determine her rights, declaratory, preliminary and permanent injunctive relief,

and declaratory relief, enjoining, vacating, annulling, setting aside all previous null
and void orders related to this case, reinstating her unlawfully-dismissed 2012
complaint, an order compelling CMS and the DOH to release withheld FOIA
documents, and also POLEP and LIU to turn over their digital/all documents. She
seeks actual, compensatory and punitive damages, costs, attorney fees, a public
apology, and immediate removal of all related denigrating references to her name. She
requests immediate intervention, a special prosecutor, and trial by jury, and, as grounds
therefore, alleges:

**PRELIMINARY STATEMENT**

Congress occupies the CLIA field with a statutory scheme that deals with
interstate commerce. State and federal action was *ultra vires*

4.      Congress enacted the Clinical Laboratory Improvement Amendment ("CLIA")
Act, 42 U.S.C. §263a(g)(h)(i)(k), a statutory scheme, (and CLIA's implementing
regulation 42 U.S.C. Term 493), under the Interstate Commerce Clause, pursuant to
the Social Security Act, like Medicare and Medicaid. As the U.S. Supreme Court said,

> *The Commerce Clause confers "rights, privileges, or immunities" within the meaning
> of §1983. In addition to conferring power on the Federal Government, the Clause is a
> substantive restriction on permissible state regulation of interstate commerce. And
> individuals injured by state action violating this aspect of the Clause may sue and
> obtain injunctive and declaratory relief.* Dennis v. Higgins 498 U.S. 439.(1991)

5.      In *Garrity v. New Jersey,* 385 U.S. 493, 500, 87 S.Ct. 616, 620, 17 L.Ed.2d 562
(1967), the U.S. Supreme Court declared that engaging in interstate commerce is a
"righ[t] of constitutional stature".

5.      Regarding CLIA, **Public Health Service Act, §353** provides:

>*(p) State Laws(2) If a State enacts laws* relating to matters covered by this section which provide for requirements equal to or more stringent than the requirements of this section or than the regulations issued under this section, the Secretary may exempt clinical laboratories in that State from compliance with this section.

6.      N.Y. State lacks the statutory scheme required by P.H.S.Act §353(p)(2) for physician offices.

7.      The Center for Medicare/Medicaid Services, ("CMS") contracts with N.Y.S./states, in this case, with the New York's Physician Office Laboratory Evaluation Program ("POLEP"))which, under a federal grant, must operate the federal CLIA Program in accordance with federal law.

8.      Pursuant to 42 U.S.C. §263a(h), jurisdiction to determine what sanctions are to be imposed for a CLIA violation is vested *exclusively* **in the Secretary of Health and Human Services**[1]. The statute provides:

>"The Secretary shall develop and implement procedures with respect to when and how each of the intermediate sanctions is to be imposed under paragraph (1)."

9.      42 U.S.C. **§**263a(h)(2) provides the sanctions the Secretary may impose–from remedial measures to financial sanctions, **to revocation of the certificate to run a CLIA laboratory.** There is absolutely no mention of a medical license revocation by the Secretary.

10.     By its express terms, CLIA, and any violation thereof, is a statutory scheme to be determined and enforced by federal authorities, pursuant to the Interstate Commerce Clause.

_____

1 See *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.* 467 U.S. 837 (1984):  If Congress's intent is made clear by statute, "that is the end of the matter..."

11.    Pursuant to Title 28 U.S.C. §1337, "the district court shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce", like Medicare, Medicaid and CLIA.

12.    U.S. Courts of Appeals have *exclusive* appellate jurisdiction over CLIA, pursuant to 42 U.S.C. §263(a)(k).

13.    As Thomas L. Heckert (the Director of POLEP) testified at the hearing: "The real enforcement through CLIA is with the federal government. [] [T]hey would be the ones who actually make the final determination. So, we would recommend this to the Federal Government and then they would be the ones who actually make the final determination".  (R. 1310-1313)

14.    The United States had previously instructed the State of New York to cease its investigation of Dr. Anghel's laboratory and never filed any charges.

15.    N.Y.S./D.O.H. is the only state/agency nationwide that has gone outside its statutory jurisdiction, that misapplied Education Laws to compliance with CLIA law, that applied sanctions, and that determined/enforced CLIA law, to permanently destroy the Plaintiff. It did so in violation of numerous federal laws and of class-of-one's rights not to be singled out for discriminatory enforcement of inapplicable laws, as punishment for free speech.

16.    No Physician in the United States Has Ever Been Brought Up on Charges, Criminal or Civil, alleging a CLIA Violation.

17.    Upon information and belief, to date,

        a) CMS, i.e. the federal government, would not prosecute a physician for a

8

CLIA violation.

      b) no physician has been prosecuted by CMS for an alleged CLIA violation.

      c) no physician has been prosecuted by the federal government (i.e. The People of the United States of America) for an alleged CLIA violation.

      d) no civil action has been brought against a physician by CMS for an alleged CLIA violation.

      e) no civil action has been brought against a physician by the federal government (i.e. The People of the United States of America) for an alleged CLIA violation.

      f) the "punishment" for submitting claims for laboratory services without proper CLIA certification is merely denial of the claim.

18.     The Third Department. of the State Appellate Division[2], (a.k.a "the Court of the Attorney General") which reviewed Plaintiff's appeal, is the only state appellate court, nationwide, which, lacking jurisdiction to review CLIA charges and all charges and orders, upheld invalid CLIA charges, in violation of the Interstate Commerce Clause, Supremacy Clause, federal law and of federally-protected rights, it upheld fraud upon itself and it upheld every constitutional deprivation, all of which rendered its orders null and void.

19.     Likewise, two State A.G.s., Defendants Cuomo and Schneiderman, at relevant times, acting outside their law-enforcement jurisdiction, in dereliction of their duty, and in violation of Title II of the Civil Rights Act of 1964, .singled Plaintiff out for

---

2http://w3.nyhealth.gov/opmc/factions.nsf/cd901a6816701d94852568c0004e3fb7/36f1305f7ad2c8c28525737f006655e4/$FILE/COURT%20171848.pdf

discriminatory enforcement of the laws. (Defendant Cuomo opposed vehemently her Petition for a TRO and preliminary injunctive relief). Likewise, Defendant Schneiderman continues his discriminatory enforcement of abusive and fraudulent regulation which includes the two invalid CLIA charges.

20.     As part of the system-wide complicity to cover-up Government corruption, her former counsels, Defendants Bateman and Good refused to move the case to federal district court under federal question jurisdiction. Deceivingly, both counsels spent time on the phone, several times, to misstate the law and to mislead Dr. Anghel that the DOH did have jurisdiction over the CLIA charges, and did so after the BPMC conceded in its Order of license revocation that Plaintiff's POL fell under federal, not state jurisdiction. (Exh. Det&Order, p. 7, para 4) http://w3.health.state.ny.us/opmc/factions.nsf/cd901a6816701d94852568c0004e3fb7/3 6f1305f7ad2c8c28525737f006655e4/$FILE/HRG%20171848.pdf.

22.     [A]n individual has a direct interest in objecting to laws that upset the Constitutional balance between the National Government and the States when enforcement of those laws causes injury that is concrete, particular and redressable.

23.     As the U.S. Supreme Court said, "Jurisdiction of the case is a basic element of due process". *Powell v. Alabama,* 287 US 45, 5',3 S Ct 55, 84 ALR 527.

24.     Yet, none of the three federal courts, where the Plaintiff wasted three more years, collaterally attacking the fraudulent state action, (Eastern District, (12-cv-03484), 2nd Circuit, (cases 13-2908 and 14-599) and Supreme Court (14-961, 14-1285)) has addressed the State's *ultra vires* regulation of compliance with CLIA Law, its discriminatory prosecution, determination and enforcement of the two CLIA

10

charges, leaving her with no remedy or justice. Similarly, federal courts usurped their power, manipulated Dr. Anghel's filings, openly engaged in case-fixing, and blocked Dr. Anghel's access to the courts for equitable relief, by unlawfully insisting that the case be argued and reviewed "on the merits" and deliberately ignoring and engaging in sheer illegality.

24.     Likewise, in dereliction of their duty, complicitly, both U.S. Attorney Lynch, now A.G., and A.G. Holder failed to intervene, and to enforce the anti-discrimination laws of the U.S., as they loudly do in other cases, despite obvious class-of-one discrimination and persecution of Plaintiff.

25.     No court has been willing to enjoin/address the retaliatory and discriminatory state action against the Plaintiff, where, despite the fraudulent charges and prolific usage of fraud, on 2/24/2009, the fact-finder ("Hearing Committee") issued a favorable Interim Decision, exonerating Plaintiff of five of seven charges–where the two invalid/federally-preempted CLIA charges remained–finding that:

> "… the medical care provided to patients C, D, E, F, and G meets minimal
> standards of care BASED ON ALL OF THE EVIDENCE WE HAVE, the
> RECORDS that we have and the TESTIMONY of BOTH EXPERTS and
> DR. ANGHEL to date, and that...EVERYTHING THAT SHE DID WAS
> MEDICALLY INDICATED AND JUSTIFIED [INCLUDING LABS AND
> THINGS], BASED ON  ALL EVIDENCE". See Exh. InterimDecision.

26.     No court has been willing to address the retaliatory state action against the Administrative Law Judge, Judge Zylberberg, who was retired four months after he oversaw the exonerating Interim Decision – a month before the Final "ReDetermination". *www.zylberberrg.com*. Vindictively, the DOH tampered with

11

and substituted the Committee's exonerating ultimate findings-of-fact, citing a

*preponderance of* planted/fabricated *evidence.*–a crime under 18 U.S.C. §§1503, 1512,

1513.

### NATURE OF THIS ACTION

27.    This is a civil action for violations of the 18 U.S.C. § 1961 *et seq.*, Racketeer

Influenced And Corrupt Organizations Act ("RICO").  RICO refers to corrupt

organizations, businesses, entities, government, or government agencies, including

civil plaintiff's lawyers[3], which/who, acting covertly, or under appearance of lawful

mission, actually, abuse or misuse their power or position and commit criminal acts,

outside any legitimate purpose.

28.    This action arises from the operation by the NYS DOH, a federal grant

recipient, of the federal CLIA program as  an extortionist enterprise, in collusion with

private parties, like United, and from its fraudulent regulation of the medical

profession, including, but not limited to, its retaliatory invocation of inapplicable laws,

and its shameless usage of fraud "in the name of the public interest".

29.    Using the coercive power of the DOH, United demands and diverts money

from physicians through so-called "Letters of overpayment", and collects unlawful

debts.  (See Exh.) Those who, like Plaintiff, don't "pay-to-play" get framed and

prosecuted. And, after they are exonerated of the fraudulent charges, as Plaintiff was,

they get reprosecuted, until eliminated, as Plaintiff was.

---

3.  In *Chevron Corporation v. Steven R. Donziger, et al.*, Judge Kaplan sharply
criticized Mr. Donziger and his co-defendants for breaking the law, and ruled that the
Racketeer Influenced and Corrupt Organizations Act, commonly known as "RICO,"
applies to civil plaintiff's lawyers, such as Mr. Donziger and his co-defendants, who attempt and/or
commit illegal acts, such as fraud.

30.    Defendants' conspiracy to punish Plaintiff culminated with the DOH's felonious revocation of Plaintiff's medical license, effectively stealing her medical license, career and livelihood, all of which continues today, through system-wide complicity to cover-up.criminal activities.

31.    Thus, rather than pursue proper official purposes, the DOH misuses a federal CLIA grant and its own arms (LIU and OPMC), also paid for by tax-payer money, to provide material support to United, to extort physicians and collect unlawful debts, or frame and destroy them with system-wide support – judicial, law-enforcement, and defense counsel. Thus, misuse of public function and tax money of the DOH, courts, law-enforcement and private parties, medical expert, defense attorneys, along with system-wide complicity to cover up  prohibited activities, again, with tax-payer money, violates RICO, injures those organizations, businesses and government offices, corrupts their legitimacy, but, also, injure the abused.

32.    This is a civil action for past and ongoing violations of Title II of the Civil Rights Act of 1964 pursuant to a state-wide policy, practice, and custom of corrupt regulation, usurpation of power, complicit indifference to arbitrary deprivation of Equal and Due Process rights, which encourages such deprivation to continue, like retaliation, discrimination, intimidation, harassment, conspiracy to cover-up illegality, and to destroy the abused. These activities are expressly prohibited by the statute 42 U.S.C. § 2000. Plaintiff relies on *Heart of Atlanta Motel, Inc. v. United States,* 379 U.S. 241, 281 (1964). and *Shelley v. Kraemer,* 334 U. S. 1.

33.    This action seeks to hold personally liable five state judges Thomas E.

Mercure, Robert S. Rose, John Lahtinen, Michael Kavanagh, Elizabeth A. Garry, for

judicial misconduct, for conspiring to usurp their power, including: issuing orders "on

the merits", in complete absence of statutory jurisdiction[4], thereby denying Plaintiff's

right of equal access to the courts, blocking her right of access to exculpatory and

impeachment evidence, by denying her motions to compel, ignoring violations of

statutory "condition precedent", which further deprived them of statutory/appellate

jurisdiction, complicitly upholding the discriminatory application of CLIA Law, the

retaliatory application of non-existing, or self-promulgated laws and standards,

ignoring violations of constitutionally-protected rights, complicitly ignoring numerous

violations of federal laws and rights, reaching merits of federally-preempted CLIA

law, violating the Interstate Commerce Clause, upholding discriminatory and

retaliatory invocation of federally-preempted and inapplicable laws, conspiracy to

cover up misconduct committed by the DOH, United, Cuomo, Leone and

Schneiderman and their own misconduct, and conspiracy to obstruct justice.

34.     This lawsuit seeks an emergency temporary restraining order, compelling

Defendant MaryEllen Elia, NYS Commissioner, Department of Education, in her

official capacity, to immediately reinstate Plaintiff's medical license, *nunc pro tunc*;

compelling the DOH/BPMC to dismiss the charges, in the interest of justice[5], and/or

---

4  *NYS Unified Court System, Part 1200, Rules of Professional conduct, Rule 5.5 Unauthorized Practice of Law provides: (a) A lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction.*

5  N.Y.S. Education law reads:  § 6530. Definitions  of professional misconduct. Each of the following is professional misconduct, and any licensee found  guilty of  suchmisconduct under the procedures prescribed in section two hundred thirty of  the public health law shall be subject to penalties as prescribed in section two hundred thirty-a of the public health law  **except  that  the charges may be dismissed in the interest of justice** (emphasis added)...

restraining, enjoining, prohibiting, mandating, in the interest of justice, that

Defendants Zucker, Commissioner of Health, and Schneiderman, State Attorney

General, in their official capacity, immediately cease their ongoing enforcement of

the null and void Order 09-132 of the Board of Professional Medical Conduct

("BPMC") which wrongfully and fraudulently revoked Plaintiff's medical license, and

issue an apology.

35.     Plaintiff has made this kind of equitable request numerous times in the last six

(6) years, in four (4) state and three (3) federal courts but her petitions, motions and

appeals have been systematically denied.  Plaintiff also made a prior request to the

former Commissioner of Education John B. King, Jr., for license reinstatement in the

interest of justice, but, on behalf of Commissioner King, her request was denied,

referencing the [null and void] Decision of the Third Dept., Appellate Division, which

upheld the CLIA charges and fraud upon itself.

36.     This action further seeks a three-judge court of original jurisdiction for

preliminary, and permanent injunctive relief, to end a system-wide policy, practice,

regulation, or custom of reckless indifference to arbitrary and fraudulent deprivation,

pursuant to:

- .     the jurisdictional three-judge court statute, 28 U.S.C. §2284, whereby, a three-judge court *shall be immediately convened, as otherwise required by Act of Congress*-- like Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a-5; and controlling precedent, Heart of Atlanta Motel, Inc. v. United States 379 U.S. 241, 267, 291 (1964) upon requesting – as Plaintiff does – injunctive relief against "a … [C]ustom or usage … pattern or practice of resistance to the full enjoyment of any of the rights secured by this title, enforced by the officialdom of the State";

15

- the Anti-Injunction statute, 28 U.S.C. § 2283, which excepts/allows injunctions [by a three-judge court], expressly authorized by Act of Congress, such as 42 U.S.C. §1983, Gibson v. Berryhill 411 U.S. 564, 573 (1973), or in aid of federal courts' exclusive jurisdiction [over CLIA Law, enacted under the Interstate Commerce Clause], as provided by P.H.S. Act §353(p)(2), or to protect or effectuate its judgments", or, here, Feds' decision, instructing the State to close Plaintiff's CLIA file, for "lack of jurisdiction";

- ongoing violations of the Commerce Clause and Due Process, brought under 42 U.S.C. §1983, Dennis v. Higgins 498 U.S. 439 (1991), or of Equal Protection claims, United States v. Virginia 518 U.S. 515 (1996), where three-judge courts were convened;

- 28 U.S.C. §1343(4), which provides for injunctive relief against ongoing violations of statutorily-protected Equal Rights, like 42 U.S.C. §1985;

- Title II of the Civil Rights Act of 1964, 42 U.S.C. §§2000a-1, 2000a-2, 2000a-3, 2000a-5, which provides for injunctive relief against [ongoing] prohibited conduct/violations of statutorily-protected rights;

- prospective relief under Ex parte Young, 209 U.S. 123 (1908) for ongoing violation of federal laws, and the US Supreme Court holding *that the conditions imposed by the federal government pursuant to statutes* [P.H.S. Act §353(p)(2), CLIA] *upon states participating in Medicaid/similar programs* [CLIA] *are not merely contract provisions; they are federal laws,* and that *under Young, states are NOT free to disregard federal law;*

- CLIA statutory scheme, and its federal-, field- or conflict-preemption of State Education Laws. *The Supreme Court has repeatedly held that spending clause statutes* [like Medicare, Medicaid, and CLIA] *preempt inconsistent state law. Townsend v. Swank 404 U.S. 282 (1971) Federal Spending Clause legislation trumps conflicting state statutes or regulations. Antrican v. ODOM*

- ongoing violations of the Supremacy Clause and Separation of Power, condemned by the U.S. Supreme Court in Steel Co. v. Citizens for a Better Environment 523 U.S. 83, 93-103 (1998);

- ongoing cover-up of fraud upon the court, Gaines v. Fuentes, (92 US [2 Otto] 10);

- violations of 15+ criminal statutes: 1) 18 U.S.C §3 Accessory after the fact; 2) 18 U.S.C §4 Misprision of felony; 3) 18 U.S.C §241 conspiracy to deprive of rights; 4) 18 U.S.C §242 conspiracy to injure and subject to different punishments; 5) 18 U.S.C. §371 Conspiracy to commit subornation of perjury;

16

6) 18 U.S.C §1001 fraud; 7) 18 U.S.C §1503 Influence jury/fact-finder to impede due administration of justice; 8) 18 U.S.C. §1512 Tampering with witness or victim, 9) 18 U.S.C §1513 retaliating against victim; 10) 18 U.S.C §1621 perjury; 11) 18 U.S.C §1622 suborning perjury; 12) 18 U.S.C §1623 Conspiracy to commit an offense against the United States; 13) Chapter 96–"RICO Act", 18 U.S.C. §1951 Interference with the Commerce Clause, 14) 18 U.S.C. §1961 *any act or threat...involving extortion,* 15) 18 U.S.C. §1962(b) *pattern of racketeering...to collect unlawful debt;* 16) 21 U.S.C §848 Continuing criminal enterprise;

37.     This action seeks declaratory judgment that the order of license revocation is null and void for being reached in complete absence of statutory jurisdiction, through fraud upon the court, in violation of the RICO Act, of Interstate Commerce Clause, of the Supremacy Clause, of federal CLIA Law, of Public Health Service Act 353(p)(2), of Title II of the Civil Rights Act of 1964, and other statutorily- and constitutionally protected federal rights, and in violation of Defendants' statutory and constitutional duty to the Plaintiff and to the public.

> "Obviously a judgment, though final and on the merits, has no binding force and is subject to collateral attack if it is wholly void for lack of jurisdiction of the subject matter or person, and perhaps for excess of jurisdiction, or where it is obtained by extrinsic fraud. [Citations.]" (7 Witkin, Cal. Procedure, supra, Judgment, § 286, p. 828.)

38     Dr. Anghel continues to suffer irreparable harm to her property, liberty, livelihood and medical career, while Defendants keep her hostage to their cover up and political maneuvering.  As ruled in *United States v. Mills*, 571 F.3d 1304, 1312 (D.C. Cir. 2009), "a constitutional violation and loss of constitutional protections "for even minimal periods of time unquestionablyconstitutes irreparable injury, *Id.,* quoting *Elrod v. Burns* 427 U.S. 347, 373 (1976)

39.     After her rights have been determined by a three-judge court, Plaintiff

demands a jury, pursuant to Article III of the U.S. Constitution, Section 2, whereby "the trial of all crimes ... shall be by jury"

40.    Plaintiff seeks a Special Prosecutor, as the DOJ cannot investigate dereliction of duty in which it is implicated.

41.    This is a civil action for violations of First Amendment and of Due Process and Equal Protection component of the Due Process Clause of the Fifth Amendment. The Complaint seeks to hold federal court officers liable, in their individual capacity, for complicitly blocking PLAINTIFF's First Amendment Right to petition the courts, for arbitrarily blocking her Fifth Amendment Right of access to a three-judge court and evidence, for conspiring to manipulate and dispose of her motion for a three-judge court and respectively, her petitions for a writ of mandamus, so as to influence the outcome of the proceedings ("case fixing"), for violating their clear and indisputable statutory duties to act within their statutory jurisdiction and scope of practice, for violating Plaintiff's right to claim and rely on their duties for relief, for denying her the protection of the laws, for issuing *ultra vires* orders "on the merits", for misrepresenting facts and law, for complicitly ignoring officials' criminal activities or immunizing them, for blocking her right to discovery of crucial evidence, and her right to a jury for almost three years now, for dereliction of duty. Some of these court officers are: District  Judge Arthur Spatt, Mag. Judge W. Wall,

42.    For her First Amendment claim, she relies on *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.,* 547 U.S. 47, whereby *freedom of speech prohibits the government from telling people what they* must say. For her claims of arbitrary

deprivation and Equal Protection Fifth Amendment claim, she relies on *Jacobs United States*, 290 U.S. 13, (1933), *Bolling v. Sharpe* 347 U.S. 497 (1954), *Bivens v. Six Unknown Named Agents* 403 U.S. 388 (1971), *Bush v. Lucas*, 462 U.S. 367 (1983), *Butz v. Economou* 438 U.S. 478, 479, (1978)[6]. For these court officers' absence of judicial immunity, she relies on *Bradley v. Fisher,* U.S. 13 Wall 335 (1871), whereby "Judicial immunity[7] is no defense to a judge acting in the clear absence of jurisdiction." For her claim of class-of-one discrimination, she relies on *Village of Willowbrook v. Olech,* 528 U.S. 562 (2000) and on Monroe v. Pape. (cite).

43.    This civil action seeks to hold liable Catherine Grochowski, and Marquis, her superior, both federal officers with the Center of Medicare and Medicaid Services ("CMS"), in charge of the release of CLIA-related documents under FOIA.

44.    Freedom of Information Law (FOIL) officers, both state and federal agents have complicitly covered up and withheld crucial documents and information which would have revealed that State's and Feds' compliance with the FOIA was corrupted by the RICO enterprise. malfeasance and felonies committed by United, DOH investigators, Petranker, whose fraud would/should have provided the basis to overturn

---

6. *Jacobs v. United States,* 290 U.S. 13, 54 S.Ct. 26, 78 L.Ed. 142 (1933), held that a plaintiff who alleged that his property had been taken by the United States for public use without just compensation could **bring suit directly under the Fifth Amendment.** A remedy also exists when **the equal protection component of the Due Process Clause of the Fifth Amendment** is violated. *Bolling v Sharpe* 347 U.S. 497 (1954). "...we have allowed a *Bivens* action to redress **a violation of the equal protection component of the Due Process Clause of the Fifth Amendment**, [citation omitted]"..., *Bush v. Lucas,* 462 U.S. 367 (1983). Federal officials should enjoy no greater zone of protection when they violate federal constitutional rules than do state officers. Pp. 496-504. [Butz v. Economou 438 U.S. 478, 479, (1978)]

7. Defendants are entitled to no immunity for acting without jurisdiction. *Mireles v. Waco 502 U.S. 9, 9-12, 112S.Ct. 286, 287-88 (1991) ... judicial immunity can be overcome if the actions, though judicial in nature, are taken in the complete absence of jurisdiction.*

PLAINTIFF's wrongful license revocation.

45.     Both LIU and POLEP alleged that they purged their records, and by their co-

conspirators'.

46.     This is a civil action for trespass, (system-wide usurpation of power, reaching

merits without jurisdiction, enforcing *ultra vires* orders[8], reviewing null and void

---

8   _*Osborn v. Bank of the United States,* 9 Wheat. 738, 865-866 (1824). *14* **A federal** [438 U.S. 478, 490] **official who acted outside of his federal statutory authority would be held strictly liable for his trespassory acts.** For example, Little v. Barreme, 2 Cranch 170 (1804). **The Court,** speaking through Mr. Chief Justice Marshall, **held that the President's instructions could not "change the nature of the transaction, or legalize an act which, without those instructions, would have been a plain trespass."** Id., at 179.

If a court is "without authority, its judgments and orders are regarded as nullities. They are not voidable, but simply void; and form no bar to a recovery sought, even prior to a reversal in opposition to them. They constitute no justification; and all persons concerned in executing such judgments or sentences, are considered, in law, as **trespassers.**" (*Elliot v. Piersol,* 1 Pet. 328, 340, 26 U.S. 328, 340 (1821)

"Where there is no jurisdiction, there can be no discretion, for discretion is incident to jurisdiction." [Piper v. Pearson, 2 Gray 120, cited in Bradley v. Fisher, 13 Wall. 335, 20 L.Ed. 646 (1872)

"When any court violates the unambiguous language of the Constitution, a **fraud** is perpetrated' and no one is bound to obey". *Watson v. Memphis* 375 US 526 (1963)

*The Supreme Court has held that if a judge wars against the Constitution, or if he acts without jurisdiction, acts where s/he does not have jurisdiction to act, the judge is engaged in an act or acts of treason. U.S. v. Will,* 449 U.S. 200, 216, 101 S.Ct. 471, 66 L.Ed.2d 392, 406 (1980); *Cohens v. Virginia, 19 U.S. (6 Wheat) 264, 404, 5 L.Ed 257 (1821).*

Proceedings of a court without jurisdiction are *coram non judice....not a judicial proceeding because lawful judicial authority was not present and therefore could not yield a judgment. Burnham v. Sup. Ct. of Cal.,* 495 U.S. 604 (608-609) (1990) plurality opinion.

Federal officials should enjoy no greater zone of protection when they violate federal constitutional rules than do state officers. Pp. 496-504. [438 U.S. 478, 479]

An act done in complete absence of all jurisdiction cannot be a judicial act. *Piper v. Pearson,* id., 2 Gray 120. It is no more than the act of a private citizen, pretending to have judicial power which does not exist at all. In such circumstances, to grant absolute judicial immunity is contrary to the public policy expectation that there shall be a Rule of Law.

The jurisdiction over the subject-matter is the right of the court to exercise judicial power over that class of cases, and is said to be essential, necessary, indispensable and an elementary prerequisite to the exercise of judicial power. *US v Cotton,* 535 US 625 (2002)

Neither Judges nor Government attorneys are above the law. See *United* States v. Isaacs, 493 F. 2d 1124, 1143 (7th Cir. 1974). In our judicial system, few more serious threats to individual liberty can be imagined than a corrupt judge or judges acting in collusion outside of their judicial authority with the Executive Branch to deprive a citizen of his rights.

orders outside appellate jurisdiction "on the merits"), under *Elliot v. Piersol,* 1 Pet. 328, 340, 26 U.S. 328, 340 (1821), and *Osborn v. Bank of the United States,* 9 Wheat. 738, 865-866 (1824), for perversion of process and manipulations of filings, framing tactics, treason, malicious prosecution, conversion and theft of medical license, and actual fraud.

47.     This is a civil action seeking a court order to compel CMS to release withheld FOIA documents, pursuant to 28 U.S.C. § 1361.

48.     Plaintiff has filed many Freedom of Information Act ("FOIA") requests for public records created or held by the Center for Medicare and Medicaid Services ("CMS"), and by the NYS DOH, all of which are of public interest and importance to the citizens of the United States, including Plaintiff.

49.     Defendants unlawfully withheld from the Plaintiff official government documents and public records, to which Plaintiff is entitled under FOIA Act, such that they were not available to be searched and produced to the Plaintiff under FOIA.

50.     Defendants' concealment of public records was motivated by the corrupt enterprise.

51.     Defendants intended to operate a covert enterprise which misuses a federal CLIA grant and the State coercive power, and state tax-payer money (for public health), to provide material support to private insurers (United), to extort physicians under the guise of "overpayment", or, if they resist, to frame them, under the guise of through fabricated evidence, fraudulently charge them with professional misconduct, fine them, destroy them, and deny and conceal the fraud.

21

52.     Their continuing conspiracy to conceal documents also includes redactions of LIU's e-mail communications by Defendant Bloch; purging of records by both LIU and POLEP (testimony of Heaphy and Mr. Heckert in 2008 indicates that both LIU and POLEP purged their records in 2006 ... in the middle of the OPMC investigation, alleging they "needed to make space"). But the record shows that they did keep digital copies of their communications, which they concealed and which Ruskin Defendants complicitly chose not to compel them to disclose.

53.     Using those redacted and concealed communications that they allegedly purged, upon information and belief, State Defendants arranged and implemented the continuation of their illegal and perverted investigations, with the intent to deprive Plaintiff of exculpatory and incriminating evidence, sufficient to dismiss the charges.

54.     As a result, Defendants unlawfully withheld documents to which Plaintiff was entitled under FOIA Law.

55.     This action seeks to hold Ruskin Defendants, Plaintiff's former defense attorneys, liable for violations of the RICO Act, during and after their representation of Plaintiff, for participating in a racketeering enterprise through which they repeatedly committed a pattern of predicate offenses, *Chevron v. Donziger.* Ruskin Defendants were complicit in the cover-up of the DOH's prosecutorial misconduct, by downplaying it, misleading Plaintiff about it, interfering with/obstructing her plan to raise it through another attorney expert in prosecutorial misconduct, refusing to raise it, duplicitously making the case for/defending the DOH and United, refusing to seek documents under FOIA, refusing to raise lack of jurisdiction over CLIA, etc.

22

In this regard, the 2nd Circuit held:

> **United States v. Benjamin**, 328 F.2d 854 (2d Cir.) (opining that the lawyer could not consciously disregard readily available information which demonstrated the illegal nature of the prosecutors' conduct. cert. denied, 377 U.S. 953 (1964).

> **United States v. Sarantos**, 455 F.2d 877 (2d Cir. 1972) (observing that a lawyer is liable for assisting in illegal conduct if it can be proven that (1) there was subjective awareness of a high probability of the existence of prosecutor's illegal conduct; and (2) the lawyer engaged in a purposeful contrivance in order to avoid raising the prosecutor's illegal conduct.

56.    By repeatedly assisting, participating in, and ignoring, and refusing to raise a series of illegal activities, Ruskin Defendants have proximately caused Plaintiff irreparable harm, which is continuing.

57.    The 12-year conduct described is consistent with a pattern and practice of criminal behavior, system-wide cover-up and obstruction of justice, as reflected in Defendants' relentless blocking of Plaintiff's meaninngful access to the courts for six years now.

58.    Since 2009, the DOH's and its co-conspirators' criminal conduct has continuously been covered up, complicitly ignored, and defended with tax-payer money, by two State A.G.s, Cuomo and Schneiderman, and three Commissioners of Health, in dereliction /violation of their duty to the public and Plaintiff.

59.    For the last six 6 years, Dr. Anghel has been continuously held hostage to courts' case-fixing, usurpation of power and arbitrary rights deprivation. Both state and federal courts acted in complete absence of statutory jurisdiction over the subject matter, and/or outside their scope of practice of law. Both distorted DOH's lack of jurisdiction as "procedural errors", and fraud upon the court as "evidentiary errors".

Both did it for the same purpose: to cover up illegality of the enterprise and to manipulate the outcome – case-fixing. Both refused to address issues of jurisdiction, law and rights, abused their power and engaged in fraud upon the court. Both distorted facts and law, to obtain an illegitimate outcome, for political purposes, or denied her filings without explanation, allowing the criminal enterprise to continue its operation undisturbed.

60.    As such, all prior state and federal orders are null and void.

61.    Since 2003, continuously, State DOH Defendants and their co-conspirators have fraudulently engaged in regulatory trespass, to intimidate, harass, extort and coerce physicians, like Plaintiff, to pay money they do not owe under the law, or lose their medical license.

62.    All Defendants (and numerous unnamed actors) have deliberately and continuously conducted or covered up the DOH's corrupt "regulatory" enterprise, in violation of the Racketeer Influenced Corrupt Organization ("RICO") Act, of Title II and of Title VI of the Civil Rights Act of 1964.

63.    The investigations by United HealthCare, the Laboratory Investigative Unit – Wadsworth Center, and the Office of Professional Medical Conduct leading up to the administrative hearings that revoked Dr. Anghel's medical license were conducted in violation of law, rule, and regulation, and, also, arbitrarily deprived Dr. Anghel of due process of law and equal rights.

64.    Since 2003, up to the present time, NYS DOH Defendants have continuously misrepresented their authority over Plaintiff's medical office practice, using hospitals

24

"tools" that apply only to their Article 28 authority over hospitals. Defendants have a long standing official policy of abuse of power and mispronouncement of jurisdiction. A decade+ ago, the DOH was enjoined, in state courts, from mispronouncing its jurisdiction, in its effort to regulate the <u>office</u> practice of medicine, which the Legislature forbids. See Nurse Anesthetists v. Novello.

65.    Specifically, LIU Defendants misrepresented their authority and investigated Plaintiff's office, using their hospital investigatory authority under Article 28. Since Article 28 excludes the office practice of medicine, like Plaintiff's, they engaged in regulatory trespass.

66.    As a matter of policy of misrepresentation of authority, on its Web site, LIU has continuously misrepresented that it is authorized to investigate Physician Office Laboratories POLs, which is an official state/DOH policy of trespass.

67.    The remaining Defendants relied on LIU Defendants' illegal searches, including their invalid subpoena, thus themselves committing regulatory trespass.

68.    Based on illegal searches conducted under LIU's Article 28 jurisdiction over hospitals, OPMC filed and prosecuted false charges, alleging that Plaintiff failed to comply with … Article 28 regulation, rules and standards, which do no apply. (Allegations H)

69.    Based on illegal searches conducted as "chart review" by a "hospital "expert", whose opinion about hospital standards was uncalled for and irrelevant to Dr. Anghel's office practice, OPMC also filed and prosecuted false charges that Dr. Anghel did not comply with <Article 28> hospital standards, rules and regulation, holding her to

25

higher standards, which do not apply to her office practice, in violation of Equal Rights and Due Process Clause of the 14th Amendment and of Title II of Civil Rights Act of 1964.

70.      Using Article 28 tools and authority over hospitals, the DOH has repeatedly engaged in regulatory and law-enforcement trespass. prophered through the testimony of a so-called "hospital expert".

71.      Falsely claiming authority[9] to sanction physicians under Education Law 6530(16) and 6530(2), for alleged "fraudulent non-compliance" with the federal Clinical Laboratories Improvement Amendment, ("CLIA") law, which actually preempts State Education Law, the DOH, in conspiracy with United, is actually misusing its coercive power to harass, extort and punish those physicians who, like Plaintiff, assert their rights against government abuse of power, by framing them and fabricating evidence.

72.      Complicitly, since 2008, the DOH and the Office of the A.G., Cuomo, Schneiderman, Leone and others have committed, jointly and severally, regulatory and, respectively law-enforcement trespass. In a complicit government scheme, two Attorneys General, Defendants Cuomo and Schneiderman, at relevant times, and their Assistant A.G., Defendant Leone, have misused their law-enforcement power, enforcing inapplicable law in a discriminatory manner, covering up DOH's and United's complicit usage of fraud, and intimidating Plaintiff, to corruptly provide material state support to Defendant United Healthcare ("United"), the official insurer

---

9 Although Defendant DOH is not even authorized to sanction physicians for alleged CLIA violations, both United and the DOH, jointly and severally, have, for years, extorted physicians to pay unlawful "CLIA debts".

of NY State employees.

73.      Likewise, Defendant Cuomo, now Governor, is corruptly using his executive power to perpetuate Plaintiff's downright persecution, while covering up his own abuse of law-enforcement power as A.G., his former troubling "partnership" with United, and his former directive, twice in 2010, to three officers of the court to submit perjurious Affirmations to the Third Department, which defeated Plaintiff's motions to compel the DOH to turn over so-called CD "copies" containing different false evidence thus exculpatory and impeachment evidence.

74.      Under Cuomo, who, as Governor and ultimate policy-maker, nominated two Commissioners of Health so far, both of whom "coincidentally" failed to enforce Public Health Law 230, the DOH has corrupted its regulatory power over professional medical conduct to punish and retaliate against those who assert their rights against its corruption and usurpation of power.

75.      The federal government, including courts, have a non-discretionary duty to enjoin State orders which continue to be enforced despite ongoing violations of federal laws and rights.

76.      Both DOH and United Defendants have intended to operate a covert enterprise to manipulate the outcome of the proceeding by manually planting false billing data in a spreadsheet format and then offering it in evidence in a CD accompanied by a perjurious Affidavit, as instructed by DOH prosercutor Bloch. With the intent to mislead, the perjurious Affidavit falsely stated that the evidence presented represented "accurate computer printouts of Plaintiff's billings".

77.    Both DOH and their expert have intended to operate a covert enterprise through CDs outside the record.by tampering with expert testimony. With the intent to escape scrutiny, right before the expert testimony, DOH prosecutors, Defendants Nemerson and Bloch, handed Defendant Dr. Petranker unscrutinized CDs, outside the record, containing DOH's talking points, falsely claiming that they were CD "copies". of a[nother] CD. With the full intent to escape scrutiny, they manipulate the outcome of the proceeding,  and to deceive, andcover up their fraud, the alleged expert stated, for the record: "I have my own copy".  [T. 1255, 1437] CD. **Dr. Petranker**: "I have my own copy/CD". See Petranker p. 19

78.    DOH used, relied on, and cited in the Determination and Order unscrutinized and uncertified documents which were not in evidence, fully intending to escape scrutiny, including Exhibit 12, the ALJ's CD, Petranker's CDs, and a letter intended "for ID only".

79.    Various arms and agents of the NY State Department of Health ("DOH"), the Laboratory Investigative Unit ("LIU"), the Office of Professional Medical Conduct ("OPMC"), the DOH's prosecutorial arm, (the "Bureau"), and the Board of Professional Medical Conduct ("BPMC"), and co-conspiring private parties, like Defendants United Healthcare ("United") and Petranker, DOH and United conspired with one another to plant, falsify, and fabricate evidence, to use tampered documents outside the record, and to abuse their power. When exposed, both of these Defendants lied to the courts to cover up their fraud and thereby obstructed justice.

80.    While representing Plaintiff at the hearing that led to the DOH's wrongful

revocation of her medical license, from 2008 to 2011, Ruskin Defendants, Plaintiff's

civil private attorneys, and the State co-defendants willfully ignored the rackeeteering

of the DOH and its co-conspirators, never argued that the CLIA claims made against

Dr Anghel were improperly being heard, never objected to DOH's handing its expert
unscrutinized CDs (outside the record), which the expert read from with impunity

during his testimony.

81.      As in *Chevron v. Donziger,* Ruskin and DOH co-Defendants formed a

racketeering enterprise through which they repeatedly committed a litany of predicate

offenses, analogous to what Judge Kaplan found Mr. Donziger and his co-defendants

did.

82.      Ruskin Defendants became willful participants in the cover-up of the DOH

corrupt enterprise, partaking in the A.G.'s Office cover up, facilitating false

representations about plaintiff's appellate record, allowing a fraudulent certification to

be attached to an uncertified document (so as to give legitimacy to a copy of the

Original CD, which was never certified or admitted into evidence. Just as limited

examples. Ruskin Defendants

    a) complicitly refused to raise prosecutorial misconduct which included
Defendant Bloch's falsification of 52 needle code descriptions from one needle to
boxes of 100 needles, to "support" her false charges and frame Plaintiff for fraud;

    b) withheld certified documents, from the Dept. of Licensing and from
Stonybrook University (Exhibit) which proved that witness "Patient B", who claimed
she was a critical care nurse, committed two crimes: perjury and the crime of
practicing nursing without a license (through testimony);

    (c) delayed for 5 months, until March 2009, the last day of the hearing, the
issuance of a subpoena to an impeachable witness Patient B, whose perjury was
proven, and in complicity with the DOH, failed to enforce the subpoena when she

failed to show up;

(d) With intent to mislead his client-Plaintiff, Defendant Bateman misstated that (he believed) exhibit 12A (an alleged CD copy) <u>was</u> certified, when he knew from the Pre-hearing that it was not, and that <u>he</u> allowed Defendant prosecutor Bloch to concoct a "certification", remaining silent when Bloch attached a copy of the a[nother] certification (of Exhibit 12) and put it in front of a document outside the record - 12 A.

(e) Complicitly, ignored fraud upon the court and upon his client. N<u>ever objected to DOH's</u> use of unscrutinized CDs <u>outside the record and to its tampering with evidence and expert/testimony, when Defendant Bloch offered Petranker "his own CD"</u>, to read DOH's talking points from, during his 4 days of testimony.. [T. 1255, 1437] <u>CD</u>. **Dr. Petranker**: "I have my own copy/CD".

(f) Refused to settle the record, refused to seek to hold the AG and DOH  in contempt of court when they refused to turn over CD documents ordered by the court which DOH used to manipulate the outcome

(g) complicitly, complimented Defendant Bloch and expressed doubt, for the record, that Prosecutor Bloch knew anything about Patient B's perjury and criminal background, rather than holding the prosecutor accountable for her statutory/duties to investigate the background of her witnesses and for her statutory duties to turn over exculpatory and impeachment evidence[10]; complicitly failed to demand that Defendants Bloch turn over exculpatory evidence re: the criminal activity of Patient A, another patient, which Defendant Bloch refused to disclose;

(h) intentionally misinformed his client that DOH had no obligation to disclose exculpatory evidence, when the statute PHL 230 d1 actually provided for mandatory disclosure.

(i) in April of 2012, Defendant Bateman and Ruskin firm refused to release their correspondence with the AG's Office, conditioning such release upon payment, by Plaintiff, of so-called unpaid legal fees which, largely, were sent to her for the first time, upon his client's-Plaintiff's request for said corespondence with the AG's Office.

(j) used his most valuable defense tool - cross-examination of 2 witnesses: Heaphy and Stephano – not to defend his client, but to defend the State against his client, by falsely establishing that the State's and United's conduct was authorized under the law, thereby covering up their unauthorized acts rather than defending Plaintiff against their unauthorized acts.

---

10 Public Health Law 230d1 mandates that the DOH disclose evidence that tends to prove physician's innocence, on a continuous basis, (which includes today).

(k) Defendant Bateman aided and abetted DOH prosecutors as he repeatedly remained quite when Bloch provided Petranker **with** unscrutinized CDs outside the record to read DOH's talking points from, during his 4 days of testimony.

83.    State and Federal judges were willful participants in blocking Plaintiff's access to the courts, despite widespread illegality and fraud upon the court. They usurped their power, discriminated against Plaintiff, corruptly manipulated her filings to reach an illegitimate outcome, and obstructed justice. [11]

84.    Both State and Federal (CMS) Defendants purged and/or concealed from the Plaintiff public records to which Plaintiff is entitled under FOIA Act.

85.    Both State and Federal (CMS) Defendants concealed official government documents such that they were not available to be searched or produced to the Plaintiff under FOIA Act.

86.    Both State and Federal FOIA Officers Defendants have intended to deprive Plaintiff of her right of access to exculpatory and impeachment evidence, by unlawfully withholding documents to which she was entitled under FOIA Law. Both state (Record Access Officers) and federal (the Center for Medicare and Medicaid Services, "CMS") agents denied or refused Plaintiff's requests for FOIA documents, thereby prolonging her irreparable injuries.

87.    The Office of the Inspector General (OIG) signed off on Plaintiff's exclusion from participation with Medicare and Medicaid, based solely on her medical license revocation even though the basis for the exclusion for alleged CLIA violation

---

11 "All laws which are repugnant to the Constitution are null and void." Marbury vs. Madison, 5 US (2 Cranch) 137,174,176. (1803)

31

and other bases are illegal/unconstitutional.

88.    Defendants' cover-up and obstruction of justice will continue indefinitely until stopped. Each named defendant has engaged in a "pattern of racketeering activity," defined as at least two acts of racketeering activity, and each named defendant has committed many more than two such acts.

89.    Plaintiff's injuries and deprivation of her legal rights are proximately related to the illegal conduct of the Defendants, each and every one of them, jointly and severally.

## JURISDICTION AND VENUE

90.    Plaintiff asserts several separate bases for jurisdiction in this court.

91.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because it is a civil action arising under the laws of the United States, the U.S. Constitution, or a federal law enacted by Congress.

92.    This Court also has jurisdiction pursuant to 18 U.S.C. §1965, which allows for nationwide jurisdiction pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 USC §§ 1961-1968.

93.    This Court has jurisdiction pursuant to 28 U.S. Code § 1651 – Writs *(a) ... all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.*

94.    This Court also has original jurisdiction over the mandatory release of FOIA documents by CMS,  pursuant to 28 U.S.C. § 1361 (federal mandamus statute). .

"The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

95.    This Court has original jurisdiction to convene a three-judge court, pursuant to 28 U.S.C. §2284, as authorized by Title II of the Civil Rights Act of 1964, or directly under Title II of the Civil Rights Act of 1964, or under the exceptions to the Anti-Injunction Statute, 28 U.S.C. §2283, when expressly authorized by Act of Congress, like 42 U.S.C. §1983, or to effectuate its judgments, or to enjoin federally-preempted regulation.

.      This Court has jurisdiction to restrain prohibited activities, pursuant to 18 U.S.C. § 1964 (a):

> The district courts of the United States shall have jurisdiction to prevent and restrain violations of section 1962 of this chapter by issuing appropriate orders, including, but not limited to: ordering any person to divest himself of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce; or ordering dissolution or reorganization of any enterprise, making due provision for the rights of innocent persons.

96.    This Court has extraterritorial jurisdiction pursuant to 18 U.S.C. 1512, which provides in its sections (h) and (i):

> (h) There is extraterritorial Federal jurisdiction over an offense under this section.

> (i) A prosecution under this section or section 1503 may be brought in the district in which the official proceeding (whether or not pending or about to be instituted) was intended to be affected or in the district in which the conduct constituting the alleged offense occurred.

97.    This Court also has the power to hear this case and issue injunctions against

State Defendants' ongoing enforcement of orders that violate federal law, for ongoing conspiracy to violate equal rights, to cover up fraud, and to clog justice, pursuant to 28 U.S.C. §1343(1)(2)(3)(4), brought under Act of Congress that protects rights, like 42 U.S.C. 1985.

98.     This Court also has supplemental jurisdiction under 28 U.S.C. §1367.

99.     This Court also has jurisdiction to expedite proceedings under 28 U.S.C. § 1657.

100.    This Court has jurisdiction over State Defendants, pursuant to Title II of the Civil Rights Act of 1964.

101.    For FEDERAL DEFENDANTS, this action arises under the First and Fifth Amendment to the U.S. Constitution, the R.I.C.O. Act, state law and 42 USC §1988.

102.    Venue lies in the Southern District of New York under 28 U.S.C. §1391(b)(2), because this is a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, and under 1503 and 1512(i)[12].

### III. PARTIES

103.    Plaintiff, **Dr. Maria-Lucia Anghel,** ("DR. ANGHEL"), is a female medical doctor of foreign (Romanian) national origin. She did two medical residencies, one in Internal Medicine and one in Anesthesiology. She completed two fellowships or subspecialties in Anesthesiology, one in Pain Management and one in Obstetric Anesthesia. She was a double-board certified pain management anesthesiologist with

---

12.18 U.S.C. §1512(i) - *A prosecution under this section or section 1503 may be brought in the district in which the official proceeding (whether or not pending or about to be instituted) was intended to be affected.*

an office practice in East Meadow, N.Y., where she duly practiced Interventional Pain

Management and Internal Medicine.  Dr. Anghel's medical practice, Interventional

Pain Management, was located at 2410 Hempstead Turnpike, East Meadow, New York

11554. She has an MBA degree in Healthcare, from the George Washington University

and she has an MA in Bioethics from the Medical College of Wisconsin.

104.     On July 22, 2009, the NYS Department of Health ("DOH") wrongfully

dispossessed Dr. Anghel of her medical license and career, and fined her a whopping

$240,000, because she asserted her rights to be free from the DOH's extortionist

regulation, and its operation, as a federal grant recipient, of a federal program,

the Clinical Laboratories Improvement Amendment, ("CLIA"), as a criminal

enterprise, in collusion with private parties.

105.     Plaintiff has wasted six (6) years of her life and medical career to get

justice, but she has been denied justice and meaningful access to the courts by seven

(7) courts so far.  As the cover-up continues "in the name of public trust", her

persecution and the denial of her FOIA requests also continue.

106.     Plaintiff is a member of a protected "class-of-one". Her class-of-one was the

basis for retaliation and violation of her rights. Se was injured as a result of retaliatory

actions, through concerted action of all defendants at relevant times.

107.     Plaintiff's injuries, including the arbitrary deprivation of her legal rights and

legally protected vested property rights, and the wrongful perpetuation of the

destruction of her livelihood, liberty to practice medicine, career, and property are

proximately related to the illegal conduct of Defendants, each and every one of them,

35

jointly and severally. Defendants used their power as a weapon of personal destruction under state or federal law.

108.    Based on DOH's wrongful revocation of her medical license, Dr. Anghel's two Board Certifications in Anesthesiology and Pain Medicine were revoked, she was excluded from insurance programs. Her life, career, and reputation were, and continue to be, fraudulently and irreversibly, ruined.

109.    Dr. Anghel is the only physician nationwide, who was vinictively delicensed through a state prosecution and enforcement of federally-preempted CLIA charges and seven courts so far have looked the other way.

110.    She has been held hostage to null and void, *ultra vire*s orders "on the merits", by four state courts, and, for the last 2.5 years, by Federal District Court and Second Circuit, which, like state courts, refused to reach issues of jurisdiction, law and rights, and denied her equitable relief and any relief. By now, seven courts refused to afford Plaintiff the protection of the laws against a corrupt DOH, whose fraudulent, null and void Order has been wrongfully enforced by two State Attorneys General, one of whom is the current N.Y.S. Governor.

111.    Complicitly, all courts acted outside their statutory jurisdiction, ignored fraud upon the court and violations of federal laws, rights and duties, rendering their own orders null, void and non-final, thereby entitling Plaintiff to an order to vacate or enjoin the ongoing enforcement of the wrongful revocation of her medical license..

112.    The acts of both State and Federal Defendants are continuing arbitrary and abusive violations of Dr. Anghel's federal rights.

113.      Several Acts of Congress, protect from, and prohibit the practice, usage, or custom of gender or national origin discrimination, and the arbitrary deprivation of Equal Rights, which includes retaliation, and persecution by state regulation, like de/licensing agencies. See Title II and VI of the Civil Rights Act of 1964.

114.      For the last seven years, diligently, Plaintiff filed repeated requests in pursuing discovery of her claims, but, systematically, they were denied or opposed by the DOH Defendants through flat lies, deceit and stonewalling. Likewise, her requests were also blocked by the courts, both state and federal, despite black-on-white evidence of fraud upon the court.

115.      State Defendants Cuomo, Schneiderman, and Leone protected, defended and covered up the illegal conduct of DOH Defendants and of their co-conspirators, United and Petranker. They were personally involved in the wrongful concealment of exculpatory and impeachment evidence. Their direct involvement consisted of a) fierce opposition to Plaintiff's filings, b) fraudulent representations of the appellate record, jointly, with Ruskin Defendants, because both participated in putting together a fraudulent Appellate Record (infra), c) inducing the filing, or filing perjurious affirmations with the courts, which proximately caused the dismissal of Plaintiff's meritorious claims, d) illegitimately threatening Plaintiff in 2011 with sanctions to intimidate Plaintiff when she asserted her rights to free speech about Defendants' prolific usage of fraud in compiling the Appellate Record, all of which prevented evidence from being disclosed.

116.      DOH and A.G. Office Defendants' illegal conduct was further conceded to, and concealed by Ruskin Defendants, who failed to recall proven perjurers for

37

impeachment purposes, accepting instead a perjurious Affidavit – the 2nd perjurious

Affidavit of Stephano, failed to enforce subpoenas of proven perjurers, agreed to

instead, filed numerous unjustified time extensions.

117.     Likewise, improperly, the Federal District Court scheduled a meaningless

non-evidentiary hearing of 20+ minutes, occupied mostly by his reading of the State

Decision about mischaracterized facts,

118.     In violation of his statutory duty, he delegated the Magistrate to terminate the

motion.for a three-judge court, blocking her right of access to a three-judge

court and also, to discovery, which he also delegated the Magistrate to terminate.

119.     Defendant Spatt repeatedly distorted Plaintiff's allegations of fraud as

evidentiary errors and her allegations of abuse of power as procedural errors.

120.     Plaintiff filed several FOIA requests and appeals seeking documents relevant

here, from both State and Federal Defendants.

121.     Her injuries, including the arbitrary deprivation of her legal rights, liberties,

property, privacy and reputation, and the pattern of denial of requests for exculpatory

and impeaching evidence are proximately caused by the illegal conduct of every one

of the Defendants, jointly and severally.

122.     **James F. Horan**, ("Horan") is Administrative Law Judge. He signed the

Determination and Order that revoked Plaintiff's medical license, as Acting Director,

Bureau of Adjudication. He acted outside his scope of practice signing

unconstitutional and facially fraudulent orders.

123.     Defendant **Andrew M. Cuomo,** ("CUOMO"), has been the Governor of

the State of New York since 2011. He is empowered in his acts through Article IV of

the New York State Constitution. He is the State's highest elected official with policy

making powers, charged with the duty of faithfully executing the laws. He was

Attorney General between 2007-2010. From 2007 to present time, Defendant

CUOMO is acting in all events relevant herein as an individual operating a criminal

enterprise. He is currently under investigation for meddling with the Moreland

Commission, after he created it to allegedly root out corruption in New York State.

124.       Defendant **New York State Department of Health** ("DOH") is a

regulatory state government agency pursuant to Public Health Law Article 2, as

authorized by Article 17, Section 3 of the State Constitution. The State of New

York provided significant encouragement for the actions taken by Defendant UHC.

The State of New York exercised coercive power over defendant UNITED during the

events as set forth in this Complaint.

125.       Defendant **Office of Professional Medical Conduct (OPMC)** The alleged

mission of the OPMC is to "protect the public from medical negligence, incompetence

and illegal or unethical practice by physicians." OPMC is part of the RICO

enterprise. OPMC conspired with United to conduct unlawful investigations to frame

Plaintiff, after she questioned United's extortionist practices.

126.       With the intent to defeat checks and balances, intentionally, OPMC violated

all mandatory statutory provisions, including "condition precedent" to the convening

of any Investigative Committee, and prior to any charges, acting outside its statutory

jurisdiction.

127.    OPMC Defendants engaged in extortionist tactics and conspired with

Stephano, Petranker and others to destroy Plaintiff

128.    OPMC prosecutors, Bloch and Nemerson, conspired with United Defendants

to fabricate evidence and to submit perjurious Affidavits falsely attesting *inter alia* that

the fabricated evidence was accurate .

129.    Defendant **Board for Professional Medical Conduct,** ("BPMC"),

through its three fact-finding hearing committee members, has sole responsibility for

final determinations in all physician discipline cases conducted within its disciplinary

scope and in accordance with the procedures prescribed in Public Health Law 230. The

administrative hearing hearing of the Hearing Committee of the BPMC was conducted

outside its disciplinary scope, in complete absence of statutory jurisdiction, and in

violation of "condition precedent", and of every statutory mandate provided under

PHL 230. The proceeding was "free for all".

130.    Defendant **Nirav Shah,** M.D., ("SHAH"), acted under color of state law as

the Commissioner of the New York State Department of Health between 2011-2014.

He was appointed by Defendant CUOMO. The Governor selects the Commissioner of

the Department of Health with the Advice and Consent of the State Senate.  He was a

high-ranking official with policy-making powers within the Department of Health.

He was authorized to dismiss charges of professional misconduct, if such dismissal

was in the interest of justice, but never did. He has a duty to enforce the NYS Public

Health Law, pursuant to N.Y. PBH. LAW § 206, Section f.  A mandatory duty under

PHL 230 Aiii is to grant a timely interview for each individual patient under review,

before an investigation committee is convened, which is condition precedent to any finding of misconduct; another mandatory duty under PHL 230 d1 is to turn over exculpatory evidence that tends to prove the physician's innocence *on a continuous basis*. Another mandatory duty is to provide the ALJ findings. Since the ALJ was retired a month before the Determination and Order, Defendants interfered with the ALJ's ability to deliver his duties, in violation of 18 USC 1513.

131.    Defendant **Howard Zucker** ("ZUCKER") is the current Commissioner of the New York State Department of Health. He replaced Defendant Shah, after Shah resigned, in 2014. Like Zucker, he has policy making powers within the Department of Health.

132.    Defendant **United HealthCare** ("UNITED") is a private party and one of the largest health care carriers in the United States, with close ties to state officials, acting under color of state law. United was the moving force behind Plaintiff's medical license revocation. Between 2003-2009, United conspired with the DOH to harass, frame, extort, and threaten medical license revocation, unless Plaintiff paid $100,000+, allegedly owed for a CLIA violation.  Invoking DOH's coercive power, United was quite successful collecting unlawful "CLIA debts", extorting physicians to "pay-to-play".–Exh Letters of Extortion and Stephano'sTestim.

133.    United is the official insurer of NY State employees.

134.    The cover-up of their extortionist and fraud  continues up to the present time.

135.     United was a willful participant in the illegal, joint activity and enterprise with the DOH, Bloch, Mc Kinnon, Heaphy, which included fabrication of/planting

41

240+ false dates, false services and false descriptions of services. He was a proven perjurer at the hearing. He also misrepresented facts in two Affidavits.

136.    Defendant **Michael Stephano** ("Stephano") acted under color of state law as a willful participant in a joint investigation with the State and its agents. He is a private party employed as manager of the Special Investigations Unit for United.

138.    He was the moving force behind the malicious revocation of Dr. Anghel's medical license.

139.    At least since 2003, DOH conspired with United to extort physicians of money they did not owe under the law, disguising it as CLIA "overpayment". Many physicians like Plaintiff were targeted for extortion and threatened with license revocation by United, backed-up by the DOH. See testimony of Stephano, investigator for United, who proudly admits to his (extortionist) successes.[13]. It is fair to assume that none of those physicians in Stephano's "successful" cases volunteered to be extorted, and that, with the DOH's full knowledge and agreement, they were intimidated and coerced to pay United money they did not owe under the law. Pursuant to a pattern of racketeering to collect unlawful debt, as a result of Dr. Anghel questioniung the extortionist demands, she is the only physician in the United States of

---

13. See transcript excerpts where Stephano, investigator for United, admits to successful extortionist demands. **Mr. B** (my counsel): *You said you were very successful in those cases?* **Stephano**: *Yes.* **Mr. B**: *Successful in those cases means you got money back to United Healthcare; is that right?* **Stephano**: *I recovered funds that were previously paid and we halted the future submission of similar claims.* **Mr. B**: *In preventing to having to pay out money on future claims?* **Stephano**: *Exactly.* [T. 1153-1154]

America whose medical license was revoked, along with a whopping penalty of $240,000, for the so-called "fraudulent violation of CLIA law". United Defendants conspired with the DOH Defendants to harass, intimidate and threaten Plaintiff with medical license revocation, unless she paid an alleged "CLIA debt". He repeatedly lied under Oath, both during his testimony and in two Affidavits.

140.    Defendant Laboratory Investigative Unit – Wadsworth Center ("LIU") is in the division of Regulatory Affairs at the Wadsworth Center, a Department within Defendant DOH, which is statutorily authorized to investigate and regulate Clinical Laboratories, environmental laboratories, tissue and blood banks, and animal research facilities in and/or doing business with New York. LIU is authorized to investigate hospitals, under Art. 28 authority, but, unlawfully, LIU also investigates private offices under pretense of authority. LIU engages in regulatory trespass and it is encouraged to do so.

141.    As a matter of policy, LIU falsely advertises on its Web site that it is authorized to investigate POLs, which is an official policy of misrepresentation of authority. LIU has no jurisdiction over Physician Operated Laboratories (POLs).

142.    Defendant Eileen Heaphy is an investigator in the Laboratory Investigative Unit  - Wadsworth Center, who investigated Dr. Anghel and conducted a site visit at Dr. Anghel's medical practice. Posing as being with POLEP, Defendant Heaphy, a Senior investigator with LIU, scheduled an inspection of Dr. Anghel's office and records, but also to serve a subpoena for her records, issued by Defendant Weinstein.

143.    Defendant Weinstein is a LIU attorney who issued an invalid subpoena,

43

which was served by Heaphy during her trespass.,

144.    A copy of the subpoena, dated 12/30/2003, is annexed hereto.

145.    As can be seen, the caption on the subpoena is  incomplete "State of New York Department of Health" with no further identifying information as to the entity on behalf of which the subpoena was issued.

146.    The subpoena issued by LIU also leaves out, on the final page, the entity Eileen Heaphy works for.  The subpoena stated that Dr. Anghel was commanded to produce certain records "by duly [a]uthorized representatives of the Commissioner of Health of the State of New York," also omitting any information identifying the entity on behalf of which the subpoena issued.

147.    LIU purposefully omitted any identifying information in the subpoena it used to investigate Dr. Anghel, so that Dr. Anghel would not question the validity of the subpoena.

148.    Trusting the DOH's authority, Dr. Anghel submitted all the lab tests requested by Weinstein's subpoena. As a result, LIU obtained records from Dr. Anghel in a clandestine and unlawful manner.  Soon thereafter, Heaphy closed her file, because "LIU had no jurisdiction" over Dr. Anghel's office and/or POL. But before she closed her file, aware that Dr. Anghel provided all the labs requested, in bad faith, Heaphy documented that she suspected that "Maria billed for tests that she never performed, which is FRAUD", which was used as the basis for the continued investigation and prosecution of CLIA charges. Later, in 2008, Heaphy again testified repeatedly that she had no jurisdiction over Dr. Anghel's POL, and that she knew that she operated a POL, by her billing forms, as reported by Stephano.

44

149.    Defendant **Eric T. Schneiderman** ("Schneiderman") acted under color of state law as Attorney General of the State of New York since 2011. When Plaintiff filed her appeal from the BPMC's Determination and Order with the Appellate Division-Third Department, Schneiderman defended and covered up the DOH criminal misconduct.  He had a mandatory duty to prosecute public corruption, fraud, and organized crime and to enforce only laws within his law-enforcement or delegated power. He was forbidden from enforcing federally-preempted CLIA law, or to enforce inapplicable laws in a discriminatory manner, in violation of federal law, Title II  and Constitution. He had a duty to cease engorcing the fraudulent BPMC Order of wrongful medical license revocation and to seek an independent investigation by Special Counsel.  He was responsible for maintaining and administering customs, practices, policies, and laws that are complained of in this action.

150.    Defendant Claudia Morales Bloch was Associate Counsel for the Bureau. She is responsible for state-created danger. As a State official, she created an opportunity for a 3rd party to harm Plaintiff. She conspired with United Defendants and with Defendant Petranker to fabricate evidence and used it to frame and harm Plaintiff for the purpose of depriving her of the Equal Protection of the laws.

151.    Defendant BPMC of New York State Department of Health, et al., State, issued BPMC order 09-132, effective 7/22/2009

152.    Defendant Andrew Cuomo, former Attorney General of New York State, enforced the null and void BPMC Order of license revocation, which sustained invalid, federally-preempted CLIA charges, in violation of the Interstate Commerce

Clause and of Plaintiff's Equal Rights, thus in violation of Title II of the Civil Rights Act of 1964 which expressly prohibits these violations He defended, covered up, and, corruptly, enforced the criminal deprivation of Plaintiff's license, livelihood, liberty and property with tax-payer money. He refused to order an independent investigation into DOH's criminal conduct and to recuse himself. He acted in dereliction of duty.

153.    Defendant Eric T. Schneiderman, Attorney General of New York State, enforced and continues to enforce the null and void BPMC Order of license revocation which sustained invalid, federally-preempted CLIA charges, in violation of the Interstate Commerce Clause and of Plaintiff's Equal Rights, thus in violation of Title II of the Civil Rights Act of 1964 which expressly prohibits them. He defended, covered up, and, corruptly, enforced the criminal deprivation of Plaintiff's license, livelihood, liberty and property with tax-payer money. He refused to order an independent investigation into DOH's criminal conduct and to recuse himself. He acted in dereliction of duty.

154.    Defendant **Robert S. Rose** ("Rose"), under color of state law, acted as state judge on a five-judge panel for the Appellate Division, Third Department. Acting outside his statutory appellate jurisdiction, in a slip opinion, he wrote the July 28, 2011 Decision, which upheld unanimously the revocation of Plaintiff's medical license through fraud upon the court and the $240,000 fine. He upheld the DOH's null and void determination and order reaching merits on the substantiality of federally-preempted CLIA Law, which illegitimately sanctioned an alleged CLIA violation, in violation of the Commerce Clause, Supremacy Clause, federal CLIA law and rights.

46

155.    Defendant Rose, on behalf of all judges, wrote the opinion, which said, in

part:

> *Matter of Anghel v. Daines*, 86 A.D. 3d 869, 927 N.Y.S. 2d 710 (3d Dept
> 2011).  The Appellate Division was "unpersuaded by Dr. Anghel's
> assertions that various evidentiary and procedural errors deprived her of
> her right to a fair hearing and due process.  *Id*. It also noted (p.5) that
> substantial evidence supported the Committee's decision to sustain the
> specification alleging that petitioner willfully failed to comply with federal
> law and regulations governing the practice of medicine (see Education
> Law § 6530 [16]). Namely, the Clinical Laboratory Improvement
> Amendments of 1988 (hereinafter CLIA) and its regulations require
> physicians to obtain a CLIA certificate before operating a physician office
> laboratory (hereinafter POL) (see 42 USC §263a; 42 CFR part
> 493)....Thus, the record reveals substantial evidence to sustain the
> specification alleging fraudulent practice based upon petitioner's operation
> of her POL (see Education Law §6530 [2], [16]). *Id*. at 872.

156.    Defendant Rose – and all five judges of the State Appellate Division[14]– lacked

jurisdiction not only to review CLIA-related charges/orders (given  U.S. Courts of

Appeals' exclusive appellate jurisdiction, 42 U.S.C. §263(a)(k)) but also the remaining

BPMC's invalid orders, reached in complete absence of statutory jurisdiction, in

violation of *statutory* condition precedent, in violation of federal rights, federal laws,

and through fraud upon the court.

157.    The federal crime reporting statute requires anyone knowing of a federal

crime to promptly report it to a federal court (or other federal officer), and requires

federal judges to receive that information and any evidence, as part of his

administrative duties. (The judge has no immunity for misconduct related to this

administrative requirement).

---

14http://w3.nyhealth.gov/opmc/factions.nsf/cd901a6816701d94852568c0004e3fb7/36f1305f7ad2c
8c28525737f006655e4/$FILE/COURT%20171848.pdf

Title 18 U.S.C. § 4. Misprision of felony. Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined under this title or imprisoned not more than three years, or both.

158.     Defendant **Thomas E. Mercure** ("Mercure"), under color of state law, acted as one of the five judges of the appellate panel for the Appellate Division, Third Department. He engaged in the out-of-scope practice of law, and refused to afford Plaintiff the protection of the laws. Acting completely outside his statutory appellate jurisdiction, he reviewed the order of medical license revocation for an alleged violation of CLIA Law "on the merits". He upheld the fraudulent and discriminatory revocation of Plaintiff's medical license.

159.     Defendant **John Lahtinen** ("Lahtinen"), under color of state law, acted as one of the five judges of the appellate panel for the Appellate Division, Third Department. Acting outside his appellate jurisdiction, he complicitly upheld fraud upon the court and upon Plaintiff and the retaliatory revocation of Plaintiff's medical license.

160.     Defendant **Michael Kavanaugh** ("Kavanaugh"), under color of state law, was one of the five judges of the appellate panel for the Appellate Division, Third Department.  Acting outside his appellate jurisdiction, he upheld the felonious revocation of PLAINTIFF's medical license.

161.     Defendant **Elizabeth A. Garry** ("Garry"), under color of state law, was one of the five judges of the appellate panel for the Appellate Division, Third Department.  Acting outside his appellate jurisdiction, he upheld the felonious

48

revocation of PLAINTIFF's medical license.  She denied PLAINTIFF"s TRO and preliminary injunction in 2009.

162.    All of the five Defendant state judges enabled rampant government deceit and corruption.

163.    U.S.C. Section 1 reads:

Whenever a judge acts where he/she does not have jurisdiction to act, the judge is engaged in an act or acts of treason" *U.S. v. Will,* 449 US 200, 216 (1980), *Cohens v. Virginia,* 19 U.S. (6 Wheat) 264, 404, (1821)

164.    18 U.S.C. Section 2382 provides:

Whoever, owing allegiance to the United States and having knowledge of the commission of any treason against them, conceals and does not, as soon as may be, disclose and make known the same to the President or to some judge of the United States, or to the governor or to some judge or justice of a particular State, is guilty of misprision of treason and shall be fined under this title or imprisoned not more than seven years, or both.

165.    Corruptly, all of the five judges made a decision based on politics, not law.

166.    U.S.C. Section 1 reads:

Whenever a judge acts where he/she does not have jurisdiction to act, the judge is engaged in an act or acts of treason" *U.S. v. Will,* 449 US 200, 216 (1980), *Cohens v. Virginia,* 19 U.S. (6 Wheat) 264, 404, (1821)

167.    18 U.S.C. Section 2382 provides:

Whoever, owing allegiance to the United States and having knowledge of the commission of any treason against them, conceals and does not, as soon as may be, disclose and make known the same to the President or to some judge of the United States, or to the governor or to some judge or justice of a particular State, is guilty of misprision of treason and shall be fined under this title or imprisoned not more than seven years, or both.

49

168.     Every one of the Defendants (Cuomo, Schneiderman, Leone, Spatt, Hall) whoowas in a position to report these judges for treason as required by law failed to report them and, instead, relied on the five judges' treasonous decision, and acted themselves outside their law-enforcement or statutory authority. Every one of these Defendants is guilty of misprision of treason.

169.     **Ruskin Moscou Faltischek, P.C.**, is a law firm in Nassau County.

170.     **Alexander G. Bateman**, ("Bateman") is Plaintiff's former counsel and Partner at Ruskin.

171.     Throughout the hearing and his representation, Defenndant Bateman refused to report the DOH's corrupt regulation, and to argue prosecutorial misconduct, and repeatedly, he joined the DOH and A.G. in their pattern of cover-up.

172.     **Douglas J. Good**, former counsel and Senior Partner with Ruskin, refused to argue DOH's prosecutorial misconduct, and, like Defendant Bateman, he, too, repeaterdly denied it and conspired to cover it up.

173.     Ruskin defendants were complicit with the state in the cover-up of its fraud and they participated in putting together a fraudulent record .

174.     Although not named as a Defendant at this time, Robert Lo Cicero is a relevant actor.  He was a Record Access Officer for State FOIA requests.

175.     Although not named as a Defendant at this time, Valerie Giordano is a relevant actor.  She was a Record Access Officer for State FOIA requests.

176.     Although not named as a Defendant at this time, Dennis Graziano is a relevant actor.  He was a Record Access Officer charged with the production of

FOIA documents from the DOH.

177.    Defendant Arthur Spatt (Spatt) acted under color of law[15] as a U.S. District Judge for the Eastern District of New York, Central Islip, in case 12-CV-03484. He issued null and void orders "on the merits", while acting outside his statutory jurisdiction, which deprives him of any immunity. He illegally instructed Mag. Wall to terminate Plaintiff's motion for a 3-judge court.

178.    Defendant William D. Wall, is a Magistrate Judge for the Eastern District of New York, case 12-CV-03484. Under color of law, and upon Defendant SPATT's illegal instruction, he acted outside his statutory authority, terminating a motion for a three-judge court - which was for Defendant Spatt to decide - and he terminated a motion to expedite discovery and proceedings, blocking Plaintiff's access to the court and equal justice.

179.    Defendant Catherine O'Hagan Wolfe is Clerk for United States Court of Appeals for the Second Circuit, cases 13-2908, 14-599

180.    Defendant Loretta Lynch is United States Attorney for the Eastern District of New York, case 12-CV-03484., case 12-CV-03484.

181.    Defendant Eric Holder is United States Attorney General cases 12-CV-03484, 13-2908, 14-599

182.    In the last 2.5 years, between 2013-2015, Plaintiff requested federal government records under FOIA from the CMS (Center for Medicare and Medicaid

---

15 It's a federal crime for anyone acting under "color of law" willfully to deprive or conspire to deprive a person of a right protected by the Constitution or U.S. law. "Color of law" simply means that the person is using authority given to him or her by a local, state, or federal government agency.

Services, which regulates physicians' compliance with CLIA Law). On numerous

occasions, Defendant Catherine Growchowski and her superiors denied Plaintiff's

FOIA requests and also her appeal seeking FOIA information regarding CMS's

instruction to the DOH to close United's complaint for lack of jurisdiction, claiming

that no records existed. Case 012920137030. The law requires CMS to disclose FOIA

information in a case where, as here, such information would reveal criminal

wrongdoing by those who administer the federal program or by a recipient of

federal grant, e.g., NYS's unauthorized and discriminatory enforcement of federal

CLIA law, for retaliatory purposes. Thus, both the Federal and State Government have

misused their office and conspired to withhold FOIA documents that would have

proven Plaintiff's innocence.

## IV.  FACTS COMMON TO ALL COUNTS

183.     Defendants conspired to operate, and/or cover up the operation of, the federal

CLIA Program, (under a federal grant), as an extortionist enterprise. The enterprise

alleges to collect so-called "overpayments", but, actually, extorts physicians, like

Plaintiff, of unlawful "CLIA debts".

184.     Because the Plaintiff questioned their extortionist and abusive "regulation",

and, apparently, Plaintiff is the only physician who objected to their extortion, from

2003 to 2009, Defendants United, DOH, its arms, LIU, and "the Bureau" conspired to

manipulate United's complaint and to conceal exculpatory evidence. They conducted

illegal and fraudulent investigations under a false identity, to plant "suspicions of

fraud". They conspired to fabricate and falsify evidence, and used it to frame and